CHARLES RAMMELSBERG ET AL. *v.* ROBERT MITCHELL AND WILLIAM H. LAPE.

1. The general rule in equity is that a trustee can acquire no personal interest in the trust property; and where he is authorized to do so by statute the validity of his title depends, in equity, upon its *bona fides*.

2. Trustees under a will to whom is bequeathed the partnership interest of the testator in the assets of a co-partnership, with power " from time to time to change the property by sale or otherwise and the proceeds to reinvest and change," may sell and dispose of such interest as an entirety, to a stranger, although one of the trustees be the owner of all other interests in the partnership property.

Rammelsberg et al. *v.* Mitchell and Lape.

3. When such sale is made without any intention to repurchase, the subsequent repurchase of the same interest from the vendee by one of the trustees for his own benefit is not of itself such *indicium* of fraud in the first sale as will restore the property to the trust estate at the election of the beneficiaries.

4. The provisions of the third section of the act of March 21, 1861 (58 Ohio L. 36), entitled "an act regulating the duties of surviving partners," may apply to a case where the surviving partner is also one of the personal representatives of the deceased partner when the other representative assumes to act in the premises as the sole representative of the estate.

5. The title of a surviving partner, who takes the assets of the partnership in proceedings had in the probate court under this act, is not vitiated by the facts that the appraisers were appointed by the probate court upon the recommendation of the parties, and that the appraisers returned under oath as their report an inventory and appraisement previously made by them at the request of the surviving partner and the personal representative of the deceased partner.

6. Real estate purchased for partnership purposes, paid for with partnership funds, and actually used in the partnership business, should be regarded as partnership assets within the meaning and operation of this statute.

7. But real estate not needed or used for the partnership purposes, though paid for with partnership means, is not assets of the firm within the meaning of this act, notwithstanding the rents and profits thereof be applied to partnership uses.

8. In proceedings under this statute, the good will of the partnership, though not a distinct item of assets, should be considered as an element of value in the appraisement of the tangible property.

9. When, in a case like the present, the good will was not considered in the appraisement, the surviving partner, who, after his election to take the assets, appropriates it to his own use by continuing the business, may be compelled to account for its value to the estate of the deceased partner.

10. An infant, against whom a judgment has been wrongfully taken, may show cause against it before arriving at full age; and, in a proceeding instituted by him for that purpose, he is bound by the judgment therein as an adult.

11. In an action by a trustee against the *cestui que trust*, in relation to trust property, wherein the trustee seeks a decree for the conveyance to him of the legal title, on the ground that he is the equitable owner, while in fact he is not such owner, and concerning which fact the parties are mutually mistaken, a decree therein in his favor, obtained without resistance, does not in equity conclude the beneficiary as to the equitable estate.

12. Where a married woman prefers a suit against her trustee to enforce

the trust or to charge the trustee with maladministration, she is concluded by a judgment against her in such suit.

ERROR to the Superior Court of Cincinnati.

The original action was brought in the Superior Court of Cincinnati by plaintiffs in error, who are the heirs and devisees of Frederick Rammelsberg, deceased, against the defendants in error, who are the executors and trustees under the will of Frederick Rammelsberg, deceased. The original petition charged the defendants with divers acts of maladministration, and prayed that certain judgments and conveyances, hereafter described, might be set aside; that the trusts might be executed, an account taken, and for other relief. All the heirs, except Catharine Frances Shultz, being infants, sued by their guardian.

The defendants answered separately, setting forth in detail their management of the trusts, and denying all charges of maladministration. Other pleadings were filed in the case, so that divers issues of fact were joined between the parties, and divers facts were admitted upon the record.

The case was tried upon testimony, and judgment rendered for the defendants.

Thereupon, the plaintiffs moved for a new trial, on the ground that the judgment was contrary to law and against the weight of the evidence. This motion was overruled, and the plaintiffs excepted, and, by bill of exceptions, placed all the testimony upon the record.

On petition in error, the court in general term affirmed the judgment rendered at special term, and this proceeding is prosecuted for the reversal of both judgments below for error alleged to have been committed at special term in overruling the plaintiff's motion for a new trial.

The pleadings and testimony show the material facts in the case, as follows:

On the 25th of February, 1847, Robert Mitchell, defendant in error, and Frederick Rammelsberg, of whom plain-

tiffs in error are heirs and devisees, entered into written articles of partnership for the purpose of manufacturing and dealing in household furniture, at the city of Cincinnati, during the pleasure of the partners. The partners were equal, and each contributed as his share of the capital stock the sum of $10,000. It was stipulated in the articles, among other things, as follows :

" It is hereby further agreed by and between the said copartners, that in the event of the death of either of the said copartners during the existence of the said copartnership, the executors or administrators of the deceased copartner, if he or they, the executors and administrators, so elect, shall and may, at his or their option, continue the said copartnership or business for the period of one year after the decease of such deceased copartner, for the joint benefit and advantage of the heirs of such deceased party and the surviving party ; and after the expiration of that term, the surviving copartner shall have the further time of one year thereafter to close all the business of the said copartnership."

The business of the firm was conducted with great success, until the death of Rammelsberg, who died testate on the 30th of January, 1863. By his will it was directed as follows :

" If my partner, Robert Mitchell, shall survive me so long, I direct that our business shall be continued in copartnership for one year after my death, by him, as provided in our copartnership articles."

And thereupon Robert Mitchell, as surviving partner, undertook to continue the partnership business for one year after Rammelsberg's death, for the joint benefit of himself and the estate of the deceased.

The controversy in this case relates to the *residuum* of Rammelsberg's estate, which was disposed of in his will as follows :

" All the rest and residue of my estate, after paying my debts and the aforesaid provisions for my wife and legacies to my brothers and sisters, as aforesaid, I give, devise, and

bequeath to my friends, Robert Mitchell and William H. Lape, and the survivor of them, and the heirs of such survivor, upon trust nevertheless, and to the uses and purposes following," etc.

In the declaration of the trust, which followed the above clause, the testator directed the trustees to manage the estate by investment and reinvestment, so as to yield the most income, with power from time to time to change the property by sale or otherwise, and the proceeds to reinvest and change ; and, after the payment of taxes and charges, to pay to his widow one-third of the income; and out of the remaining two-thirds to provide for the maintenance and education of his children until the distribution of the estate as therein directed. He also directed the payment of $5,000 as an advancement to each of his children, as follows : To the sons at majority, and to the daughters on arriving at twenty years of age. The distribution of the residue was directed to be made among all his seven children in equal shares (the issue of a deceased child to have the parent's share), when the youngest child should become of age, if his widow should be then deceased.

The above-named trustees were also nominated in the will as executors, and they afterward qualified as such and accepted the trusts.

The widow died within a year from the death of the testator.

MEMPHIS HOUSE.—About six months previous to the death of Rammelsberg the firm of Mitchell and Rammelsberg, by purchase from I. & M. Flaherty, in consideration of an indebtedness from the latter to the former, became the owners of a stock of furniture at Memphis, Tennessee, invoiced at $14,341.22. This stock was put in trade at Memphis, under the agency and in the name of one John P. Hoffman, at an agreed salary of $1,200 for one year, with an understanding that at the end of the year Hoffman should become a partner in the business at Memphis.

After the death of Rammelsberg, the business at Memphis was continued until October 22, 1863. This business

was conducted by Hoffman before and after Rammelsberg's death, for a period of about fifteen months, and at a net profit of about $20,000.

On the day last named Robert Mitchell and William H. Lape, on an invoice and appraisement of this stock amounting to $33,671.30, sold the half interest therein, belonging to Rammelsberg's estate, to George Mitchell and John P. Hoffman. And, at the same time, George Mitchell, John P. Hoffman, and Robert Mitchell entered into partnership articles for the purpose of taking this stock and continuing the furniture business at Memphis under the name of Mitchell, Hoffman & Co., as equal partners—each having one-third interest in the firm. To accomplish this agreement, Robert Mitchell also sold to George Mitchell and Hoffman one-third of his interest in the invoice; and the business was continued by the new firm.

St. Louis Firm.—On July 2, 1855, Mitchell and Rammelsberg entered into a written agreement with William Mitchell, of which the following is a copy :

" This instrument witnesseth to the following articles of copartnership, entered into by Robert Mitchell, Frederick Rammelsberg, and William Mitchell, viz. :

" 1. Robert Mitchell and Frederick Rammelsberg, as Mitchell & Rammelsberg, of Cincinnati, Ohio, manufacturers of furniture (cabinetware and chairs), associate with them this second day of July, one thousand eight hundred and fifty-five, Wm. Mitchell as partner, who is to reside, and now is residing in St. Louis, Mo., for the purpose of conducting and carrying on the furniture business in that city.

" 2. Mitchell & Rammelsberg, of Cincinnati, are to furnish the capital, say thirty thousand ($30,000) dollars, to carry on the business, and shall as far as they can supply the demand of such furniture as is salable and wanted in St. Louis, and at Cincinnati wholesale prices. Articles which Mitchell & Rammelsberg, of Cincinnati, do not make are to be bought at the best terms elsewhere.

" 3. The name of the firm shall be ' Mitchell, Rammels-

berg & Co., St. Louis, Mo.' Either partner may use the name of the firm, but only for purposes connected with the business to be conducted; under no pretext shall Wm. Mitchell use the name, that is, indorse or become liable, for purposes not connected with the business.

" 4. Wm. Mitchell is to receive fifteen hundred ($1,500) dollars per annum for his services, to be paid him out of the business as he may need it; he is to devote his whole time to the said business, and is not to engage in any other business during the copartnership.

." 5. The profit and loss shall be equally divided between the three partners at the end of each business year (1st of July). Wm. Mitchell's share of the same shall remain in the business as capital until his investment equals that of the other partners (one-third), and after the 1st of July, eighteen hundred and fifty-six, he is to pay ten per cent. interest per annum on all capital he has less than one-third.

" 6. The copartnership shall exist during the pleasure of the three partners, but may be dissolved by either partner, he giving six months' notice of the same in writing to the other two partners.

" 7. The firm shall employ a bookkeeper, who shall at the close of each month furnish a condensed abstract of the business done during the month to Mitchell & Rammelsberg, in Cincinnati, and all goods bought of and furnished by them, shall be paid for as near as possible within four months after the purchase.

FREDERICK RAMMELSBERG,
WM. MITCHELL,
ROBERT MITCHELL."

Under this agreement, business was commenced in St. Louis, and was continued, notwithstanding the death of Rammelsberg on the 30th of January, 1863, until the month of January, 1864. At the latter date, an invoice and appraisement of the property of the firm of Mitchell, Rammelsberg & Co., personal and real, were taken and an account between the partners stated, which showed the interest of Mitchell & Rammelsberg in the firm to be $115,726.07,

and that of William Mitchell to be $50,800.46. Thereupon Robert Mitchell and William H. Lape, executors and trustees, sold to William Mitchell the third interest of Rammelsberg's estate at that valuation, on about fourteen months' time, without interest.

Afterward, in February, 1864, Robert Mitchell purchased of William the one-sixth interest in the St. Louis house, under an agreement that the business there should be conducted by them as equal partners.

THE CINCINNATI HOUSE.—On the 12th of January, 1864, an invoice and appraisement were made of the personal effects of the firm, and of all real estate purchased with the joint means of Mitchell & Rammelsberg, amounting to the sum of $831,128.86, including the interest of the firm in the assets of Mitchell, Rammelsberg & Co., at St. Louis. This appraisement was made, under oath, by Thomas Smith, Benjamin P. Hinman, and Alexander P. Williamson, who had been selected by Robert Mitchell and William H. Lape for that purpose.

Afterward, on the 27th of February, 1864, a petition was filed in the Probate Court of Hamilton county, of which the following is a copy:

" The petition of Robert Mitchell, severally, survivor of Frederick Rammelsberg, deceased, who, with said Mitchell, were late partners in the manufacture and sale of furniture in the city of Cincinnati, county and state aforesaid, and of the said Robert Mitchell, jointly with William H. Lape, executors of the last will and testament of said Frederick Rammelsberg, deceased, states that the said Frederick Rammelsberg died on the 30th day of January, A. D. 1863, leaving a last will and testament which has been duly proven and admitted to record in this court, whereby said Mitchell and Lape were nominated as his executors, and directing, among other things, that the business of said copartnership should be carried on without change by said Mitchell, survivor, for one year from and after the decease of said Rammelsberg, for the mutual benefit of said Mitchell and the heirs of said deceased. That this provision and direction

in said will was in pursuance of the terms of the articles of copartnership entered into between said Mitchell and Rammelsberg, about the 25th day of February, A. D. 1847, and under which they carried on said business from said date up to the time of the decease of said Rammelsberg. It was further expressly provided and agreed, by said articles of copartnership, that in the event of the death of either of said partners, the survivor should have a whole year from and after the termination of said year last aforesaid, to settle up the business of said copartnership.

" That is to say, said survivor, after carrying on said business for a year after the death of his copartner, was to be allowed an additional year to settle up said business.

" The petitioner further states that, in pursuance of said will and articles of copartnership, the said Robert Mitchell did continue and carry on said copartnership business, under their said copartnership name, and for the joint benefit of the said survivor and the heirs of said deceased for said additional year, which year ended on the 30th day of January, A. D. 1864.

" The petitioner desiring now to close and settle up said copartnership business in pursuance of the statute in such case made and provided, entitled 'An act regulating the duties of surviving partners,' passed March 21, A. D. 1861, pray your honor to nominate and appoint three appraisers, whose duty it shall be to make out, under oath, a full and complete inventory and appraisement of the entire assets and liabilities of such partnership, to be returned to your honor and filed in this court, as provided for in said statute.

" And that said survivor, Robert Mitchell, may have the privilege, with the consent of the said William H. Lape, as executor of Frederick Rammelsberg, deceased, to take the assets of such partnership at the appraised value thereof, first deducting therefrom the debts and liabilities of such partnership, upon his complying with the terms of purchase set forth in the third section of said statute herein above referred to.

　　　　" By KING & THOMPSON, *Attorneys.*"

On this application the probate court appointed Thomas B. Smith, Alexander W. Williamson, and Benjamin P. Hinman " appraisers, to make out, under oath, a full and complete inventory and appraisement of the entire assets and liabilities of the late partnership of Mitchell & Rammelsberg, and forthwith deliver the same to the court."

On the second day of March, 1864, the appraisers made return, under oath, and thereupon the court made an order. as follows :

" In the matter of the estate of Frederick Rammelsberg, deceased.

" The appraisers heretofore appointed by this court, on the 27th day of February, A. D. 1864, to make out, under oath, a full and complete inventory and appraisement of the entire assets and liabilities of the late partnership of Mitchell & Rammelsberg, and to whom an order to appraise was issued out of this court, on the 29th day of February, A. D. 1864, having this day returned to this court the said order, with the inventory and appraisement by them made thereunder, and the court having carefully examined the same, finds that all their proceedings have been and are, in all respects, regular and in pursuance of the statute in such case made and provided, and the same are hereby approved and confirmed. And it appearing by said inventory and appraisement that the whole interest of the estate of said Frederick Rammelsberg in said co-partnership assets, over and above all liabilities of said partnership or charges against him, amounts to $394,709.74, including his share of the assets of the firm of Mitchell, Rammelsberg & Co., at St. Louis, which is $57,863.03, as appears by said inventory and appraisement; and it further appearing that said Robert Mitchell and William H. Lape, as executors of said Rammelsberg, have already sold said interest in the firm or partnership at St. Louis to William Mitchell, for the price of $57,863.03, it is therefore deducted from said sum of $394,709.74, above named, leaving a balance due said estate of Frederick Rammelsberg of $336,846.71.

" And the said surviving partner, Robert Mitchell, now

appearing in court, and electing to take the assets of said late co-partnership at the appraised value thereof, and assume the liabilities thereof, and the said Wm. H. Lape, acting in this behalf as sole executor as aforesaid, also appearing in the court and assenting thereto, and the court deeming such disposition of the assets proper and advantageous to the distributees interested in the estate of said Frederick Rammelsberg, it is ordered and adjudged that said Mitchell take such assets in said inventory returned, and that said Wm. II. Lape, acting in this behalf, as sole executor as aforesaid, execute and deliver to him, the said Mitchell, an assignment and transfer, in due form of law, for the share of said Rammelsberg's estate in all said assets, upon his, said Mitchell, executing and delivering to said Wm. H. Lape, executor as aforesaid, his promissory note for said sum of $336,846.71, payable nine months after date, with good and approved security, as required by said act passed March 21st, 1861, under which these proceedings are had. And upon the said Robert Mitchell giving bond and satisfactory security to the said William H. Lape, acting sole executor of said Rammelsberg, for the payment of the debts and liabilities of said partnership.

"Filed, March 2, 1864."

The inventory returned by the appraisers to the probate court was a copy of the invoice made by the same parties, of the date of January 12th preceding. The property inventoried was set out by items, and, in addition to the personal effects of the firm, embraced all real estate which had been purchased with partnership funds, parcels of which were situate in different states and in several counties in this state.

All the real estate so purchased and inventoried, as well as the profits and expenses thereof, had been uniformly regarded and treated by the partners as partnership assets; yet certain parcels only were used in carrying on the business of the firm, while other parcels were rented and used for other purposes, and were held as mere investments.

The title to all the real estate, it is believed, was taken in the names of the members of the firm.

The conditions of the above order of the probate court having been complied with, Robert Mitchell assumed con trol of all the property, claiming to hold the same as his own absolutely.

In March, 1865, the executors and trustees filed a petition in the Superior Court of Cincinnati (No. 18,518), making the present plaintiffs in error defendants, averring their inability, under the circumstances, to execute the trusts of said estate without the direction of the court, and stating their desire to have the accounts of their administration, as far as the same had been administered, duly examined. The prayer of the petition was that the trusts of the will might be administered under the directions of the court, and that the court would adjudge what provision and allowance, if any, should be made to all or any of the defendants, previous to the final distribution, etc.

To this petition the infant defendants answered by *guardian ad litem*, and Catharine F. Shultz and her husband filed an answer and cross-petition asking for an annual allowance out of the income of the estate. In this case, the court has decreed an annual allowance to each of the testator's children, including Mrs. Shultz. And, from time to time, the executors and trustees, under leave of the court, filed accounts of their subsequent administration of the estate, including payments made by Robert Mitchell on account of the assets of the estate taken by him under the proceeding in the probate court, which accounts have been approved by the court from time to time. The cause is still pending for further accounting.

Afterward, on the 20th of April, 1865, Robert Mitchell filed a petition in the Superior Court of Cincinnati (No. 18,654), to which Catharine F. Shultz and her husband, and the other children and heirs of Frederick Rammelsberg and William H. Lape, executor, were made defendants. In his petition, the plaintiff recited the proceedings in the probate

court, and all the facts relating to the purchase by him, as surviving partner, of the partnership assets of Mitchell & Rammelsberg, including all the real estate embraced in the inventory returned to said probate court. The prayer of this petition was for a conveyance of the legal title, from the defendants, of the interest of Rammelsberg's estate in the several parcels of the real estate.

To this petition the minor defendants answered by *guardian ad litem*. Mr. and Mrs. Schultz answered, admitting the proceedings in the probate court as alleged. The answer then proceeds:

"But these defendants say the inventory and appraisement of said assets were not made as of the 31st day of January, 1864, viz., at the expiration of the period of one year from the death of said testator, but as of 12th of January, 1864, and thereby the estate has lost the one-half of the accrued profits from sales and from the working up and manufacture of materials during the time intervening between said 12th and 31st days of said month of January, a period of nineteen days, which ought to have been added to the amount of said note, and which would have made the amount thereof largely greater than the said sum of $336,-846.71; and they say that such profits were not less than $15,000, of which they are entitled to one-half. They further say that, although the note of the plaintiff was due on December 2, 1864, only about $82,000, besides interest, had been paid thereon, leaving due thereon over $254,000, which ought to have been paid long since, in order that it might have been invested to better advantage, as directed by the will. These defendants say they are ready to make such conveyance as this court shall direct; but they ask that said plaintiff may be required, in addition to the balance due on his said note, to pay the one-half of the said profit for said period of nineteen days, and that said payments may be made before such conveyance shall be ordered."

On the final hearing of this case, the court, among other things, found as follows:

"The court further finds that there is no error in the said

inventory and settlement of the said partnership, nor in respect to the profits of the business conducted by the plaintiff after the decease of said Rammelsberg, as alleged and claimed by the defendants, Catharine F. Schultz and Charles H. S. Schultz, in their cross-petition; and that the plaintiff is not chargeable with any addition to the amount of said note."

" The court further finds, from the testimony, that the plaintiff has paid to William H. Lape, executor, etc., the whole amount of said note, after allowing said credit, and directs that the note and mortgage be delivered up and canceled."

Thereupon a decree was entered as follows:

" It is therefore adjudged and ordered that the defendants, the only children and heirs of Frederick Rammelsberg, and the residuary devisees under his will, execute, acknowledge, and deliver a deed to the plaintiff in fee-simple, conveying all the estate which Frederick Rammelsberg had, or was entitled to, in the said real estate, and they are forever enjoined from setting up or asserting any claim to the same adversely to the said sale, so made thereof to the plaintiff by virtue of the said proceedings in the probate court; and in default thereof for thirty days, that A. R. Dutton, Esq., a master commissioner, especially authorized and empowered thereto, shall, in the name of said defendants, execute the same, as to those lands in the city of Cincinnati or county of Hamilton, and as to the rest, this judgment shall stand and operate as such conveyance."

*Perry & Jenney,* for plaintiffs in error:

I. The sale should be set aside without reference to the question whether or not an undue advantage was obtained by the purchasing trustee. *Devou* v. *Fanning,* 2 Johns. Ch. 257, 259, 269; 4 How. 556; *Armstrong* v. *Houston's Heirs,* 8 Ohio, 554; *Dunlap* v. *Mitchell,* 10 Ib. 120; *Bobart* v. *Atkinson,* 14 Ib. 236; *Glass* v. *Greathouse,* 20 Ib. 515; *Ex parte Bennett,* 10 Ves. 385; *Winchester* v. *Lawrence,* 3 Ib. 740; Hill on Trusts, sec. 538; *Paul* v. *Squib,* 12 Penn. St. 296.

II. The circumstances of this case furnish not merely *indicia*, but proof of undue advantage. On this subject, and what should be considered in fixing a valuation upon a business and property like this, see *Case* v. *Abeel*, 1 Paige, 393; Parsons on Partnership, 261, 263, 265, 444; *Dougherty* v. *Van Nostrand*, 1 Hoff. Ch. 68; *Martin* v. *Van Shaick*, 4 Paige, 479.

III. For what the laws were before the passage of the act of March 21, 1861 (58 Ohio L. 36), see Parsons on Part. 440, 441, 442, 445, 446; *Knox* v. *Gye*, L. R., 5 H. L. 675; *Case* v. *Abeel*, 1 Paige, 498; *Ray* v. *Vilas*, 18 Wis. 169; *Chambers* v. *Howell*, 11 Beav. 15; 4 Mylne & Cr. 45; *Wedderburn* v. *Wedderburn*, 2 Keene, 722; 4 How. 558; 3 Paige, 178; 8 Ves. 349; *Millet* v. *Blunford*, 23 Eng. Ch. 265; *Hart* v. *Ten Eycke*, 2 Johns. Ch. 113.

For the rule of construction of statutes, see *Manuel* v. *Manuel*, 13 Ohio St. 465.

Bearing in mind the well-established distinction between what a surviving partner might do, and what he might do after uniting the two characters of survivor and trustee, we are prepared to inquire if the act of March 21, 1861 (58 Ohio L. 36), did abolish the rule, heretofore regarded so fundamental, and heretofore maintained as one of the most necessary rules in the administration of justice with such inflexible constancy.

The act itself does not purport to make such a change. It is entitled " an act regulating the duties of surviving partners," and does not allude to any other relation. It purports to prescribe regulations by which the purchases made by surviving partners of the interest of a deceased partner from his executor or administrator shall be regulated. It imposes upon such executor or administrator duties and discretion concerning the sale which preclude the idea that he could unite the two characters and still exercise the privileges prescribed in the statute. It contemplates, not perhaps an adversary proceeding, but a proceeding in which the interest of deceased shall be responsibly represented; and in which one person shall not stand as buyer and seller. The survivor is

required to give notice to the executor or administrator. Was this notice to be given to himself? The survivor is required to make an inventory; if he fails, the executor or administrator is required to make it. Does this mean that when the survivor fails to make it the survivor shall himself make it? He can not purchase without consent of the executor or administrator. Does this mean that he can not purchase without his own consent?

The survivor is to give his promissory note with approved security; and to give a bond and security to the administrator or executor. Does it mean that he is to approve the security and to take charge of his own bond and note? *Vyse* v. *Foster*, 8 L. R. Ch. App. Cases, 329.

Should the statute be held to apply to purchases made by a survivor who unites the two characters of survivor and executor, it was not in this case complied with, nor was the case within the statute. The inventory and valuation were not made at the proper time nor in manner in conformity with law. There was no legal inventory or valuation, at any time, of the assets at Memphis or St. Louis; nor were the inventory and valuation at Cincinnati made in the course of proceedings made by the statute; nor were they, *when made*, in any manner sanctioned by law. The statute requires that the inventory and valuation shall be made after notice and application to the court; by persons appointed by the court, who shall act under oath when they make it. In this case the appraisers had not been appointed by the court, had not been sworn; and there was nothing requiring their appraisement to be filed. The statute requires that when the appraisement has been made it shall be delivered to the probate judge "*forthwith.*" This word is not to be stricken out. In this case its importance is apparent. A valuation made on a rising market in January, and delivered to the probate judge in March, is not delivered "forthwith." If a correct valuation when made, the lapse of time was such that it was presumably incorrect when delivered. It was not in any fair sense the kind of transaction contemplated by the statute. Moreover, the

purchases of a considerable portion of the firm assets at Memphis and St. Louis had been made by the purchasing trustee without reference to this statute or any other.

A considerable portion of the real estate is claimed not to have been firm assets in the sense of the statute.

For the law distinguishing real from personal estate, see Parsons on Part. 363, 365, 371, 372, 373, 374, 376; Parsons on Cont. 149, 150.

The real estate held by or for the firm was held as tenants in common, and could not be disposed of by the survivor or executor, but descended to the heirs of deceased, not being wanted or needed to pay debts or adjust equities between the partners. *Green* v. *Graham*, 5 Ohio, 264; *Sumner* v. *Hampson*, 8 Ohio, 328; *Green* v. *Green*, 1 Ohio, 535; Parsons on Part. 376; *Miller* v. *Proctor & Anderson*, 20 Ohio St. 449.

The subsequent proceedings in chancery did not estop the heirs from asserting their rights: 1. Because they were taken by the trustees while still trustees, and open to the same objections as the sale; 2. The heirs, with the exception of Mrs. Shultz, were minors; 3. Mrs. Shultz was a *feme covert*; 4. None of the heirs were advised of their legal rights; 5. Neither the petition in the probate court nor either of the petitions in chancery stated the facts truly. *Mulford* v. *Munich*, 3 Stock. (N. J.) 16; *Hoffman & Co.* v. *Cumberland & Co.*, 16 Md. 453; *Butler* v. *Haskell*, 1 Dess. 708; *Reakets* v. *Montgomery*, 15 Md. 46; *West* v. *Sloan*, 3 Jones' Eq. 46, 102.

*A. Taft & Sons*, also for plaintiffs in error:

I. Where one of two partners, under articles stipulating that in case of the death of either, the other should carry on the business for one year, for the common benefit, has died, leaving a will which appointed the surviving partner and another executors and trustees for his children, and the other executor has sold the interest of the deceased to the surviving partner, he remaining executor and trustee under the will, such sale was void as against the children

and heirs of the deceased partner; and, on their applica-
tion, the survivor will be held to account for the assets, and
for the profits he has made therefrom. *Dutton* v. *Willner*,
52 N. Y. 312; *Riddle* v. *Roll*, 24 Ohio St. 572, 579; *Bain*
v. *Brown*, 56 N. Y. 285; *Galloway* v. *Barr*, 12 Ohio, 352;
*Parker* v. *McKenna*, L. R. 10 Chy. App. 96; *Keech* v.
*Sandford*, 3 Eq. Ca. Abr. 741; *York Building Co.* v. *McKen-
zie*, 8 Bro. Par. C. (4th ed.), Appendix, and 3 Paton, 378;
*Davou* v. *Fanning*, 2 Johns. Ch. 252; *Cumb. C. & T. Co.* v.
*Sherman*, 30 Barb. 553; *Moore* v. *Moore*, 5 N. Y. 276; *Gard-
ner* v. *Ogden*, 22 N. Y. 327; *Ringo* v. *Binns*, 10 Pet. 267;
*Bain* v. *Brown*, 56 N. Y. 285; *Barrington* v. *Alexander*, 6
Ohio St. 189; *Welsh* v. *Perkins*, 8 Ohio, 52; *Armstrong* v.
*Houston*, Ib. 552; *Menchill* v. *Dunlap*, 10 Ohio, 120; *Glass*
v. *Greathouse*, 20 Ohio, 516; *Rodgers* v. *Rodgers*, Hopkins'
Ch. 515.

II. In the sale to the surviving partner of a large and
profitable establishment for the manufacture and sale of
furniture, which had been founded and carried on by the
firm for fifteen years with continuing prosperity, the good-
will should be estimated and paid for, and any sale made
by the executors of the deceased partner to one of them-
selves, without taking its value into account, will be pre-
sumed to be unjust and fraudulent in fact, and will be set
aside on the application of the children and heirs of the
deceased partner who have not consented thereto.

*McDonald* v. *Richardson*, 1 Gifford, 81; *Smith* v. *Everett*,
27 Beavan, 452, 455; *Hammond* v. *Douglas*, 5 Ves. 539;
*Crawshay* v. *Collins*, 15 Ves. 227; *Hall* v. *Burrows*, 10
Jurist, U. S. 55; *McGowan, etc.* v. *McGowan*, 22 Ohio St.
370; *Scott* v. *Rowland*, 20 W. R. 508; S. C. 26 L. Times,
U. S. 391; *Shipwright* v. *Clements*, 19 W. R. 599; 7 W. R.
365; Johnson, 174 (Eng.); 12 W. R. 289; 1 H. & M. 271;
18 W. R. Ch. Dig. 44; S. C. 39 L. J. Ch. 79; *Labouchere*
v. *Dawson*, L. R. 13 Eq. 322; *Wade* v. *Jenkins*, 2 Giffard
Ch. 512; *Bell* v. *Ellis*, 33 Cal. 620; Story on Part. 169, 173,
sec. 99; 3 Atk. 114; 3 Dow. & Ry. 1, 228; 2 M. & S. 352;
*Johnson* v. *Hellebye*, 2 De Gex, J. & S. 448; *Wedderburn*

v. *Wedderburn*, 22 Beav. 104 ; *Johnson* v. *Hellebey*, 24 Beav. 65 ; *Banks* v. *Gibson*, 34, 568 ; *Millersh* v. *Kean*, 27 Beav. 241 ; 28 Beav. 455 ; *Hall* v. *Burrows*, 4 De Gex, J. & S. 150 ; 2 Lindley on Part. 846 ; *Cook* v. *Collingridge*, 1 Jac. 607 (4 Cond. Eng. Ch. 607) ; *Robertson* v. *Quiddington*, 28 Beav. 529 ; *Lewis* v. *Langdon*, 7 Simon, 421 ; *Williams* v. *Wilson*, 4 Sand. Ch. 379 ; *Bradbury* v. *Dickens*, 27 Ib. 53 ; *Austin* v. *Boys*, 2 De Gex & J. 626 ; *Turner* v. *Major*, 3 Gif. 442 ; *Willett* v. *Blanford*, 1 Hare, 271 ; *Holden* v. *McMakin*, 3 Pars. Eq. Cas. 270 ; *McFarland* v. *Stewart*, 2 Watts, 111 ; Musselman's App., 6 P. F. Smith, 81 ; *Dough-erty* v. *Van Nostrand*, 1 Hoff. 68 ; *Case* v. *Abeel*, 1 Paige, 401 ; *Marten* v. *Van Schaick*, 4 Ib. 479 ; *Barrow* v. *Barrow*, 27 L. T. N. S. 431, 432.

III. Such a sale can not be made valid by any order of the probate court under the "act regulating the duties of surviving partners," passed March 21, 1861 (58 Ohio L. 36), as that act is not applicable to a case where the survivor is also an executor of the deceased partner, and a trustee for his wife and children. For the rule in construing this act the court is referred to *Smith* v. *People*, 47 N. Y. 330 ; *Cook* v. *Collingridge*, Jac. 607 (4 Cond. Eng. Ch. 286) ; *Feather-stonaugh* v. *Fenwick*, 17 Ves. 298 ; *Tennant* v. *Trenchard*, L. R., 4 Ch. Ap. 537.

IV. That where such a sale has been made to the surviving partner, while holding the position of executor and trustee of the deceased partner's estate, no proceedings which he may procure in a court of equity, against the minor heirs of the deceased partners, or against an heir who was under the disability of coverture, can make such sale valid and binding upon them without their consent. *Truly* v. *Mouzer*, 5 H. 142 ; 2 Story Eq., sec. 887 ; *Humphreys* v. *Leggett*, 9 H. 313 ; *Massie* v. *Mathews*, 12 Ohio, 351 ; *Long* v. *Mulford*, 17 Ohio St. 484 ; *Smith* v. *Kay*, 7 H. L. Cas. 751 ; *Tennant* v. *Trenchard*, L. R., 4 Ch. Ap. 537 ; *Greenlow* v. *King*, 3 Beav. 49 ; *Drake* v. *Hukill*, 3 Russell, 428.

*Matthews, Ramsey & Matthews*, for defendants in error.

Whether the sale was made legally as well as fairly depends, in the first instance, upon the question whether the sale can be supported by the act of March 21, 1861 (S. & S. 508), regulating the duties of surviving partners.

Before proceeding to the discussion of the meaning of this statute and its proper application, it will be necessary to consider and determine, as to certain points, what was the existing law prior to its passage.

1. As to the rights of a surviving partner to the good will: *Martin* v. *Van Schaick*, 4 Paige, 479; *Crawshay* v. *Collins*, 15 Ves. 224; *Featherstonaugh* v. *Fenwick*, 17 Ves. 309; *Chissam* v. *Dewes*, 5 Russ. 29; *Kennedy* v. *Lee*, 3 Mer. 441; *Hammond* v. *Douglas*, 5 Ves. 539; 3 Kent Com. 64; *Lewis* v. *Langdon*, 7 Sim. 421; Parsons Part. 263 and notes; *Staats* v. *Howlett*, 4 Denio, 559; Parsons Part. 444; Story Part., sec. 99.

2. As to the partnership real estate: Parsons Part. 366, 369, 372; *Miller* v. *Proctor & Anderson*, 20 Ohio St. 442.

3. As to the dealings between the survivor and the representatives of the deceased partner: *Knox* v. *Gye*, L. R., 5 H. L. 675; *Chambers* v. *Howell*, 11 Beav. 6; *Vyse* v. *Foster*, L. R., 8 Ch. Ap. 309; *Wilson* v. *Greenwood*, 1 Swanst. 483; *Crawshay* v. *Maule*, 1 Swanst. 529; Parsons Part. 446; Lindley Part. 869; *Ex parte Garland*, 10 Ves. 119; *Ex parte Richardson*, 1 Buck. 209; 2 Wms. Ex'rs, 1624; Id., pt. 3, b. 1, ch. 2, p. 851; *Richardson* v. *Richardson*, 9 Barr, 430; *Miles* v. *Durnford*, 2 De G. M. & G. 641; 2 Sim. N. S. 234; *McDowell* v. *McDowell*, 1 Bailey Ch. 324; *Peake* v. *Ledges*, 8 Hare, 313.

We think the foregoing authorities sufficiently show that prior to the passage of the statute of March 21, 1861:

1. A surviving partner and the executor of the deceased partner might, *without the intervention of a court*, make a valid agreement for the purchase by the former, at a fixed price, of the partnership assets, subject, of course, to impeachment, as in other cases, for fraud, collusion, undue advantage, misrepresentation, concealment, or mistake.

2. That where the surviving partner was also one of the executors of the deceased partner, a similar agreement, *made under the sanction of a court*, would be carried into effect by a decree conclusive on all interests. *Willett* v. *Blanford*, 1 Hare, 263 ; *Case* v. *Abeel*, 1 Paige Ch. 398.

Such being the state of the law at the time of its enactment, the conclusion to be drawn in reference to the statute of March 21, 1861, is, that it was intended to bring within the supervision of the probate court every case of the conduct of the executor of a deceased partner, in his dealings with the survivor in respect to the partnership estates, which, before its enactment, fell within either of the above classes, and to fix the terms on which the surviving partner might be allowed to become the purchaser of the interest of the deceased partner, so as to furnish an effectual and summary jurisdiction competent to protect the rights and interests of both.

The language of the act covers the case ; no reason can be assigned to exclude it from its spirit and design.

If it should be held not to apply to a case where the surviving partner was sole executor of the deceased partner, when resort must still be had to a court of general jurisdiction in equity, still the reason for the exclusion of that case would not apply here, where Mitchell was one of two executors, and, in the matter of the appraisement and in the proceedings in the probate court, was severed entirely, not only in name, but in fact, from the execution of the trust.

Assuming, then, that the statute referred to governs the case, it follows that the sale carried the *good-will* and the *real estate* of the partnership.

Two objections remain to be considered.

The first is, that the inventory and appraisement was not such as the law contemplates, because it was in fact made before the proceedings were begun.

If the appraisers were duly appointed by the court, it is difficult to see what objection reasonably exists to their adopting an inventory and appraisement, just made by themselves, if they return it under oath as their own at the

time.  Certainly the action of the court upon it, in the absence of fraud or collusion, is conclusive.

The second objection is, that application for the appraisement was not made by the survivor within thirty days after the death of his partner.

At best, this would be a mere irregularity, in not observing a provision of the statute, merely *directory*, not an essential condition of the jurisdiction of the court.  In case of such delay, on the part both of survivor and executor, it would not, when application was finally made, operate to revoke the jurisdiction of the court, but only authorize an inquiry into the profits made since the dissolution of the partnership by the death of one of its members.

But when the delay has occurred, as it did here, at the request of the testator, expressed in his will, and in pursuance of the contract contained in the partnership articles, those claiming all their interests, under both instruments, can hardly be heard to repudiate their stipulations.

But the validity of the sale to Mitchell does not depend solely upon the proceedings in the probate court.

The record in the case of Mitchell and Lape, executors and trustees, against Schultz and others, can not perhaps be said to be conclusive as yet between the parties to it, as no final judgment has been rendered.  But it is still pending, and such action as the court has taken must stand till set aside.

The record in the case of Mitchell against Schultz is of a more conclusive character.

The court in that suit had a jurisdiction as clear to confirm the transaction after it had been made, as before that it would have had to authorize it.

That it had the jurisdiction to decree the latter has already been abundantly shown ; and such a decree, still in force, would have been, in any other forum, a complete bar to any subsequent inquiry ; for it would have been the case of trustees called to account for doing what had

been done under the direction of a court of competent jurisdiction.

When was it ever heard that that was not a complete defense, as against minors, married women, or any others, in a proceeding seeking to impeach it collaterally? Daniel Ch. Pr. 153, 154; *Burnett* v. *Hamill*, 2 Sch. & Lef. 566; 2 Kent Com. 281; *Long* v. *Mulford*, 17 Ohio St. 507; Code, sec. 534.

*Rufus King* and *S. J. Thompson*, also for defendants in error.

The act of March 21, 1861, gave the court jurisdiction.

The act contains no restriction. It extends to every partnership, and gives the probate court plenary-jurisdiction over "the entire assets." Its terms are exceedingly comprehensive, both as to the inventory and as to the disposal of the assets. "It shall be lawful for the surviving partner or partners, with the consent of the administrator or executor, and the approval of the probate court, *by which such administrator or executor may have been appointed and qualified*, to take the assets of such partnership at the appraised value thereof."

This transaction, it will be observed, is not treated by the statute as being a sale. The survivor is regarded rather, in his common-law right, as already having the title and custody of the assets, and the right therefore to "take" them. The interest of the deceased party is in the proceeds and in being exempted from the debts. The objection that because the survivor is a fiduciary he can not, under any circumstances, avail himself of a law expressly intended to remedy and remove the disability under which he already labored, is singular. The purpose was to get rid of the very principle which is now supposed to defeat this legislation, and it was designed to accomplish it through the medium of a *sale by the court*. *Howard* v. *Duncan*, 1 Tur. & Rus. 81; *Beaden* v. *King*, 9 Hare, 499; *Ex parte Mooreland*, 1 Mont. & Mac. 76; Dwarris on Stats. 614, 615; *Salkeld* v. *Johnson*, 1 Hare, 196.

The statute (2 S. & C. 1212), confers entire and unrestricted power upon the probate court.

First, to compel an inventory by the survivor, or if he be in default for thirty days, then by the executor. The time thus limited is not jurisdictional, but marks the period after which the executor or administrator may have the remedy. Secondly, on the application of the survivor and consent of the executor appointed by the court, and whose appointment and control are therefore in the hands of the court in this proceeding, to authorize the surviving partner to " take the assets." It is the control and approval of the court which concludes the matter.

It is not a suit—it is obviously intended as a proceeding *in rem;* and in aid of the speedier settlement of the decedent's estate, as well as a due preservation of the rights and interest of the living partner. No process or forms, other than the inventory, are prescribed. All else is left to be conducted according to the rules and practice adopted by the court for " conducting the business;" to be not inconsistent with other laws of the state, but such as shall, in its discretion, be necessary and proper for carrying this law into effect. *Cullen* v. *Allison,* 13 Ohio St. 446, 452; *Shelden's Lessee* v. *Newton,* 3 Ohio St. 494; *Robb* v. *Irwin,* 15 Ohio, 689; *Heighway* v. *Pendleton,* 15 Ohio, 735; *Cochran's Lessee* v. *Loring,* 17 Ohio, 409; 3 Ohio St. 503.

This statute confers no new principle or right. It simply transfers to the probate court a jurisdiction which previously was confined to courts having a general or special chancery jurisdiction. It is purely remedial in its object, and doubly beneficial in its operation; not only aiding the proper jurisdiction of the court in securing evidence, and advancing the prompt settlement of estates, but also subserving the interests of trade by enabling the surviving partners to prosecute the business of a " *going concern.*"

The summary privilege thus afforded to the survivor, of taking the assets at the valuation so effected, is nothing new. The right of the decedent's widow to take the whole inventory, at the appraisement, in the probate court; and the

right of either of the heirs to take the whole of his lands at the price returned by the commissioners in partition, are familiar in practice.

Extraordinary examples of the policy of sustaining proceedings of this summary and *ex parte* character, where founded upon statutory authority, will be found in *Weyer* v. *Zane*, 3 Ohio, 305 (explained in *Adams* v. *Jeffries*, 12 Ohio, 253), and *Glover's Heirs* v. *Ruffin*, 6 Ohio, 255 ; 4 Ohio, 495 ; 8 Ohio, 44 ; 15 Ohio, 735 ; *Robb* v. *Irwin's Lessee*, 15 Ohio, 689. And as to the power and authority of the court : 2 Williams on Exrs. 810 ; *Bogart* v. *Hertell*, 4 Hill, 492 ; *Smith* v. *Everett*, 27 Beav. 446, 454 ; 1 S. & C. 603 ; *The State* v. *Culling*, 2 Ohio St. 1 ; *Paine* v. *Mooreland*, 15 Ohio, 435.

As to the power of a trustee to purchase trust property and the qualifications of the power : Hill on Trustees, *536 ; *Michoud* v. *Girod*, 4 How. U. S. 503, 557 ; *McCarty* v. *Steam Cotton Press*, 5 La. 16 ; 2 Sugd. Vend. 119 ; *Campbell* v. *Walker*, 5 Ves. 678 ; *Davou* v. *Fanning*, 2 Johns. Ch. 252, 261 ; *De Calers* v. *Le Ray*, 3 Paige, 178 ; 1 Turn. & Russ. 81 ; *Ex parte Molineaux*, 2 Deac. & Chitty, 245 ; *Ex parte Rolf*, 1 Deac. & Chitty, 77 ; *Ex.parte Skinner*, 1 Mont. & Ayton, 81.

McILVAINE, J. After a careful examination of all the testimony in this case, we are satisfied that there has been no actual or intentional fraud or bad faith on the part of the defendants or either of them, in the management of the trusts reposed in them by the last will and testament of Frederick Rammelsberg, or on the part of Robert Mitchell as surviving partner of the firm of Mitchell & Rammelsberg. But, however just this conclusion may be, it does not follow that their administration of these trusts must, in every particular, be approved. The administration of a trust may be vicious, notwithstanding it is free from bad faith. The dealings of a trustee with strangers should be such as to make the good faith of the transaction manifest; but in his dealings with the beneficiary, the general rule is that an advantage secured to himself can non be retained by showing good faith in the transaction.

The whole controversy in this case grows out of the fact that trust property, under the administration of the defendants as trustees, has been transferred to Mitchell, one of the trustees, who claims to hold and own it as his absolute estate and property. The main object of the original action was to compel the defendants to administer the property alleged to have been so transferred and converted, as trust assets still remaining in their hands as trustees, and to account for the proceeds and profits thereof. Such transfer and conversion, as to part of the property described in the petition, are denied by the defendants; and as to the balance, they seek to justify the transfer under the legislation of this state, and the order and approval of the probate court made in pursuance of such legislation. The conversion of the property at Memphis and St. Louis is denied, while the transfer of the assets in the Cincinnati house is sought to be justified.

We will first consider the matters relating to the sale of Rammelsberg's interest in the Memphis house. This sale was made within a year from the death of Rammelsberg. In our opinion, however, the business of this branch house was not within the contemplation of the parties at the time of making of the partnership articles, and was not a part of the business to be carried on, as therein provided, by the surviving partner for a year after the death of either partner. Nor was it within the direction contained in Rammelsberg's will in respect to the continuance of the business for a year after his death. Mitchell, as surviving partner, therefore, was under no obligation to continue that house, for any period of time, for the joint benefit of himself and the estate, and having determined to discontinue it before the expiration of the year, we think the defendants, as executors and trustees under the will, had ample time to dispose of it. Nor is there any reasonable suspicion, under the circumstances, that the power was not fairly and prudently exercised.

While it is true that Mitchell, at the time of the sale, arranged with the purchasers for a continuance of the busi-

ness, under the proprietorship of a new firm, it is not true that he succeeded, as a member of the new firm, to any part of the interest sold ; but, on the other hand, he disposed of a part of his own interest to the same purchasers, so that his interest in the new firm was one-third, instead of one-half, as in the old concern.

The only question of doubt on this branch of the case, which has been entertained by any member of the court, is, whether it was competent for the trustees to dispose of Rammelsberg's interest as an entirety.   We are all inclined to think, however, that this matter was within the discretion of the trustees, under the very ample powers. of sale as conferred by the will, and, the discretion being exercised in good faith, there is no valid objection to the sale.   We are not clear, on the testimony, that the trust estate has been properly credited with the proceeds of this sale; but if not there can be no difficulty in correcting, in future accounts,. any mistake or omission which ·may have occurred in the former accounts of the trustees in relation thereto. But, however this matter of accounting may turn out, we are strongly impressed with the conviction, from the whole testimony, that the transaction was made in good faith, without any personal benefit, or hope of such benefit, to either of the defendants from· the sale of the Rammelsberg interest.

In regard to the sale of Rammelsberg's interest. in the St. Louis house, the court has taken the same view as above expressed in relation to the Memphis house.

It is true that shortly after the sale of the interest of Rammelsberg, in St. Louis, Mitchell bought of the purchaser, the former partner, such interest in the house as made them equal owners.   We think, however, that the testimony does not show that at the time of the sale of Rammelsberg's interest there was an intention on the part of Mitchell to repurchase any part of the interest sold.   If this sale was free from fraud, and we think it was, Mitchell might well buy in, even from the purchaser, so as to make them equal partners in the future business of the house.

In such case, he was not in any sense dealing with trust property, for the reason that the trust had been lifted from the property by the previous sale. On the whole case, we think this transaction, like the former, should be sustained.

The transfer of Rammelsberg's interest in the firm property belonging to the Cincinnati house to the surviving partner presents several questions of greater difficulty. This transfer was made under the supervision of the probate court, which assumed to act in pursuance of the provision of an act of the general assembly, passed March 21, 1861 (58 Ohio Laws, 36). The provisions of this statute are as follows:

"SEC. 1. *Be it enacted, etc.*, That when any person in the State of Ohio shall die, who at the time of his death was a member of any partnership in the State of Ohio, it shall be the duty of the surviving partner or partners within thirty days from the death of such deceased partner, to make application to the probate judge of the county in which said partnership shall have existed, and upon first giving notice, to the administrator or executor of such deceased partner, of such application, for the appointment of three appraisers, whose duty it shall be to make out, under oath, a full and complete inventory and appraisement of the entire assets and liabilities of such partnership, and forthwith deliver the same to the said probate judge, to be by him filed, but not recorded in his office.

"SEC. 2. That if the said surviving partner or partners shall neglect or refuse to have an inventory and appraisement made of the partnership assets and liabilities as provided for in the first section of this act, it shall be the duty of the administrator or executor of such deceased partner to have said inventory and appraisement made in accordance with the provisions of the first section of this act.

"SEC. 3. It shall be lawful for the surviving partner or partners, with the consent of the administrator or executor, and the approval of the probate court by which such ad-

ministrator or executor may have been appointed or qualified, to take the assets of such partnership at the appraised value thereof, first deducting therefrom the debts and liabilities of such partnership, and upon his or their giving to the administrator or executor of such deceased partner his or their promissory note, with good and approved security, for the payment of the interest of such deceased partner in said partnership assets, in nine months from the time .he or they shall so elect to take said partnership assets; and provided, further, that said surviving partner or partners shall give bond and security to the administrator or executor of such deceased partner for the payment of the debts and liabilities of such partnership."

1. The first question arising under this act is, do its provisions apply in a case where the surviving partner is one of the personal representatives of the estate of the deceased partner? Whether they would or not, where the survivor is the sole representative, we need not now inquire. It would seem, however, that the statute only contemplates a case where a person, other than the surviving partner, represents the estate. But we think, nevertheless, that the terms as well as the purpose of the act may be fully satisfied and accomplished by its application, if the case be one in which the estate is represented by an executor or administrator who is not the surviving partner, although the survivor may also stand in the relation of personal representative to the estate. Under our system of administering estates, where the trust is confided to two or more persons, any one of them may bind the estate without the concurrence of his co-representatives.

We see no good reason, therefore, for holding that the statute may not have an operation according to its terms where the surviving partner, although an executor also, deals with a co-executor who assumes, in good faith, to act in the premises as sole representative of the estate. While it may be, and doubtless is, true that the double character of the survivor would in such case invite close scrutiny into his conduct, and would render the transaction void for fraud if any

Rammelsberg et al. *v.* Mitchell and Lapé.

unfairness or undue personal advantage were obtained by him, still the scope of jurisdiction under the statute can not be contracted by a mere apprehension that undue advantage might be fraudulently obtained by giving to the statute an operation according to the plain meaning of its terms.

The duty of making application to the probate court for the appointment of appraisers within thirty days from the death of a partner is imposed upon the surviving partner. After that period, in case of his neglect, the like duty is imposed upon the personal representative. And under the third section of the act, whenever an inventory and appraisement shall have been made, the surviving partner may, with the assent of the executor or administrator, and the approval of the probate court, take the partnership assets, so inventoried and appraised, at the appraised value, by complying with the conditions named in the statute.

It was for the benefit of deceased partner's estates, rather than of the surviving partner, that this act was passed, and assuming that the legislature had knowledge of the frequency of instances where the surviving partner becomes one of the personal representatives of a deceased partner, we think it highly improbable, from the language used, that the legislature intended to exclude such estates from the benefits of this statute.

2. Were the proceedings before the probate court vitiated by the fact that the appraisers, in making up their inventory and appraisement, adopted as the basis of their report an invoice of the partnership assets previously made by them under the direction of the executors, in taking an account of stock? We think not. The invoice had been taken immediately before the appointment of the appraisers, and there is no showing that the assets had materially changed. If such showing had been made, it might have affected the *bona fides* of the transaction, but would not have reached the jurisdiction of the court. The fact that the invoice was made by the same persons did not affect their competency as appraisers. The *bona fides* and fairness

of the appraisement not being successfully assailed, we can not see how the title of the surviving partner, under his election to take the assets at the appraisement, can be avoided on the ground here made the matter of objection.

3. Can partnership real estate be transferred to a surviving partner as assets of the firm, under this statute?

In so far as the proceedings authorized by the act are adversary in character, it is the personal representative, and not the heir, of the deceased partner who stands in the relation of adverse party to the surviving partner. From this fact it may be fairly assumed that the assets thus transferable are such only as are by law subject to the administration and control of the personal representative, and do not include those of which the beneficial interest descends to the heir. The foundation question, therefore, would seem to be: Under what conditions and circumstances, if any, does real estate become personal assets, to all intents, in the hands of a copartnership.

It must be conceded that a copartnership is incapable of taking or holding the legal title to real estate, yet it is equally certain that it may acquire an equitable estate therein. It is well settled that whenever real estate is purchased with partnership funds, an equitable estate accrues to the partnership, whether the legal title be conveyed to the partners as individuals, or to either of them, or to a stranger; and in such case, upon the death of the person holding the legal title, it descends to his heir at law in trust for the benefit of the partnership—at least to the extent that it may be needed to satisfy demands against the partnership, whether such demands exist in favor of a stranger or a member of the copartnership. This doctrine is quite familiar, as is also the doctrine that in such case the realty is regarded and treated as personal property in the hands of the partnership to the extent it may be needed for partnership liabilities.

And we may go a step further. There is no doubt that if, by the terms of the partnership articles, real estate be pur-

chased with partnership funds, or be put otherwise into the partnership stock, to be used and held solely for partnership purposes, it is to be regarded as converted out and out into personalty, so that the heir at law takes no beneficial interest therein in any event, but the proceeds not needed for partnership purposes passes to the personal representatives of the copartners.

A question, however, is made, and concerning which some doubt arises from the conflict in decided cases. Will anything short of an express covenant in the partnership articles have the effect in equity of converting realty into personalty to all intents?

We see no good reason for holding that an agreement in writing is necessary for such conversion. Undoubtedly the intention to convert out and out should be made to appear clearly; but such intention may be inferred from circumstances with sufficient clearness. While, therefore, we think that the mere fact that real estate has been bought with partnership means is not sufficient to impress upon it the character of personalty for all purposes, even though the rents and profits thereof may have gone into the partnership business, still, we are of opinion that such conversion is sufficiently shown where real estate is purchased for partnership purposes, paid for with partnership means, and used solely for the conducting of the partnership business. The line of demarcation between an absolute conversion and a conversion *sub modo*, is this; in the former it must be needed and actually used in the partnership business; in the latter it is enough that it was purchased with partnership means.

We conclude, therefore, that the equitable title to partnership real estate which has been appropriated and exclusively devoted to the partnership business, may be transferred to the surviving partner by proceedings in the probate court, had in pursuance of this statute. On the other hand, such proceedings are ineffectual to transfer any interest in real estate not so devoted. Real estate of the latter description not being assets of the firm within the meaning of the act, such proceedings in relation thereto are void for want of

jurisdiction over the subject-matter, and the equities of the heir, who is not a party to the proceeding, are in no wise affected. In the case before us, this class of property remained in the hands of the trustees, subject to the same trust after the proceedings in the probate court as before them.

*The good will.* It is claimed that the defendant, Mitchell, appropriated to his own use the good will of the firm of Mitchell & Rammelsberg without making compensation therefor to the estate of Rammelsberg, and that, if he can not be disturbed in his title to the tangible assets, he should, nevertheless be compelled to account to the estate for its value.

The good will of the partnership, at the death of Rammelsberg, was not cast upon Mitchell as surviving partner for his own benefit. The estate of the deceased partner is entitled to a moiety of its value to the full extent that it was or might have been realized.

The value of the good will of such copartnership is the estimate of advantage secured by succeeding to its business, without reference to the exclusion of any person from engaging in the like business. There is no implied agreement between partners, that upon the dissolution of the firm by the death of a member, that the survivor will not engage in and carry on a like business on his own account. The value of such good will is based on the mere probability that the customers of the firm, and others induced by its reputation, will deal and trade with its successor; the advantage of succeeding to an established business. Such good will is not properly an item of assets for distinct and independent valuation, but it is an element in the value of the tangible property of the partnership, and should have been considered by the appraisers in making the appraisement of the partnership assets.

In the inventory and appraisement of the assets, under which Mitchell succeeded to the interest of Rammelsberg, it seems that the good will was not considered either as a separate item or as an element in the value of a portion of the tangible property.

By the terms of the partnership articles, the good will of the concern, in the event of the death of either partner, was secured to his estate for the period of one year from such death. To this extent the estate of Rammelsberg realized the benefit of the good will by a continuance of the business for that period on joint account. And it appears from the testimony that the appraisers, in making the appraisement of the furniture manufactured and on hand ready for sale, took as the basis of their estimates of value the current price-lists of the firm, and deducted therefrom a reasonable percentage for the costs and expenses of making sales. By so doing the value of the good will was secured to the estate in respect to such assets.

But it appears from the testimony of the appraisers themselves that they were of opinion that they had nothing to do with the good will. Through this misapprehension of duty it would seem that the buildings, machinery, etc., were valued as though the business had been or must of necessity be discontinued. If this were so, the estate of Rammelsberg was wronged. The difference between the value of the assets when the good will is considered as an element, and the valuation returned by the appraisers to the probate court, if there was any difference, is the measure of an advantage obtained by Mitchell over the estate of the deceased partner, which, in equity, he ought not to retain. The appraisement was made with the view of transferring to the surviving partner the whole property and business of the firm, and should have been made as of a going and not of a dead concern. If Mitchell had not elected to take the property at the appraisement, it would have been the right of those interested in Rammelsberg's estate to have insisted upon a sale of the property as an entirety and as a going concern to the highest bidder, with the benefit of the good will.

Under such circumstances, the appraisement ought to have been set aside. This, however, was not done, and the question now is, should the sale and transfer to Mitchell be

declared void, or should he be held to account for the good will?

The proceedings under which he took being authorized by statute, and being free from fraud or bad faith, we think his title ought not to be disturbed; yet, when his relation to this property as trustee under the will is considered, we think he should be required to account for the value of the good will.

As to the bar of former adjudications in the Superior Court of Cincinnati, in cases Nos. 18,518 and 18,654.

All the present plaintiffs, except Mrs. Shultz and her husband, were infants at the date of those adjudications, and may, therefore, in this case show cause against those judgments to the full extent that the subject-matter of this suit was adjudicated in those cases.

The objection that infant defendants may not show cause against a judgment wrongfully taken against them until they arrive at full age, can not be maintained. The supposed ground for such objection does not exist, as we understand the rule, to wit, that the judgment herein would be no more binding on them than the judgment against which they seek to show cause. Having voluntarily preferred their suit in the action showing cause, demanding that their rights as infants shall be determined now, they will be bound by the judgment herein, as if they were adults.

As to Mrs. Shultz, whose only disability at the date of those proceedings was coverture, different questions arise, which make it necessary to inquire to what extent those cases adjudged matters involved in the original suit, and, if at all, to what extent she is concluded by them.

In No. 18,518, the executors and trustees invoked the court to construe Rammelsberg's will as to allowances to be paid to the heirs pending the trust, and also to examine their accounts as trustees under the will. The construction placed upon the will in that case does not affect the matters involved here. It is true that in that case the court has examined and approved accounts wherein mat-

ters involved here were entered; but inasmuch as that case is still pending for further accounting, we think there has been no such judgment as ought to conclude Mrs. Shultz in this action.

The decree rendered in favor of the plaintiff, Mitchell, in No. 18,654, placed in him the legal title to all the real estate in controversy in the original action. It was for this purpose the suit was prosecuted. The allegation, in substance, was that the plaintiff, before that, had secured the entire equitable estate to himself; and no one disputed the plaintiff's allegation. If there had been no relation of trust between the plaintiff and Mrs. Shultz at the time that decree was entered, she would certainly be concluded both as to the legal and equitable estate in the property, the legal title to which was decreed to Mitchell. But, waiving all question as to her coverture, we think, upon the sole ground that he was at the time trustee of this property for her benefit, he can not protect himself under the decree when it is shown that it ought not to have been rendered. To the extent that the equitable estate did not pass to Mitchell under the proceedings in the probate court, he must be regarded as trustee of the property for her benefit as well since the decree as before it. Mrs. Shultz at the time believed that all the real estate had, in equity at least, passed to the plaintiff. He is responsible for that belief. It was his duty as her trustee to have informed her correctly in the premises. It is no answer to this to say that he did not act toward her in bad faith. He was dealing with trust property, and was seeking to divest himself of the trust for his own benefit. If he also had a mistaken belief, why should the mistake inure to his benefit and her injury? Mrs. Shultz did not resist the decree, because she was ignorant of her rights. Mitchell, as her trustee, was bound to protect her rights. By appealing to the court for a decree, he did not put her at arm's length. The decree did not sever the relation. It operated only on the legal title. It was not intended to change the equitable rights of the parties. The court was not called

upon to transfer or ascertain equities, nor did it do so either in terms or in fact. The decree was based on a mistake of facts, innocently stated it is true, but stated nevertheless by a trustee for his own benefit. The decree would operate as a fraud if it were now held to have extinguished the trust.

As to the finding and decree of the court in case No. 18,654, upon the matter and issue arising on the crosspetition of Mrs. Shultz and her husband, she is concluded by them. These were of her own seeking, and were, in every sense, adversary. The judgment of the court was invoked by herself, and her cause was not in the keeping of her adversary.

Upon the whole case, we think the judgments below should be reversed, and the cause remanded for a new trial as to all matters and issues in relation to the good will of the firm, and also as to those parcels of the real estate of the firm, which, under the rules herein stated, did not pass to Mitchell under the proceedings in the probate court.

*Judgments reversed.*

WELCH, C.J., dissenting, said: I differ with my brethren on the two main questions involved in the case: 1. I think Mitchell is not bound to account for the good will of the business, the partnership having been dissolved, and being in no sense a " going concern." 2. The real estate should be regarded in equity as partnership assets, and Mitchell's title thereto sustained. I think, therefore, that the judgment of the court below should be affirmed.

WHITE, J. I concur in the judgment in this case. I also agree that the plaintiffs, under the circumstances of the case, are not concluded by the decree which undertakes to invest the surviving partner with the title to the real estate, of which the probate court had no jurisdiction. The object of the suit in which the decree was rendered was to clothe the surviving partner with the legal title to the property, the equitable title to which he had already ac-

quired by virtue of the proceedings in the probate court. His right to the property was based exclusively on that proceeding, no other claim or title being asserted for adjudication. In so far, therefore, as the probate court had no jurisdiction or authority under the statute to transfer the real estate of the plaintiffs, I think the decree of the superior court may be impeached, as well by the adult plaintiff as by the minors, toward all of whom the defendant stood in the relation of trustee.