*Ninth*—Applications awaiting entry, whether published or not, must be made to conform to these regulations, both with respect to amount of ground and examination as to the character of the land.   Entries already made will be suspended for examination by the Commissioner, and such additional proofs as may be deemed necessary in each case will be demanded.

Very respectfully,

N. C. McFARLAND,

*Commissioner.*

## NORWALK NATIONAL BANK *v.* JAMES SAWYER.

( *Supreme Court of Ohio, October 3, 1882.*)

1.  PARTNERSHIP.  Money borrowed by one partner, on his individual credit, will not become a debt of the firm by being used in its business; and the rule is not different where the money was loaned for the purpose of enabling such partner to pay to the firm his portion of a specified sum which each partner had agreed to contribute in order to increase the firm's capital.

2.  MONEY BORROWED BY ONE MEMBER OF FIRM.  Land purchased with partnership funds and occupied and used by the firm in conducting its business, is partnership property, although the conveyance is made to the individual members of the firm; and a third person having knowledge of such facts, who takes from one of the partners a mortgage on his undivided interest in such land to secure the individual debt of such partner, will be postponed to the lien of a firm creditor whose debt accrued subsequently to the execution of such mortgage.

Error to District Court of Huron County.

In 1863, or early in 1864, Geo. W. Clary, Seymour B. Martin and Daniel Packard, agreed to enter into a partnership, under the firm name of Clary & Co., to carry on distilling grain at Monroeville, Huron county.   At the time the partnership was actually formed ( February 12, 1864), they purchased and received a conveyance of certain real estate at Monroeville, upon which there was a distillery.   The conveyance was made to them individually, and not as a firm, and on the face of the instrument they were simply tenants in common.   In fact, however, they purchased as partners, the consideration named was paid by them out of the partnership moneys, and the property was from that time occupied and used by them in the prosecution of the partnership business.

In August, 1864, Packard sold and conveyed his interest in the partnership and its property to Clary and Martin, and withdrew from the firm, and the remaining members carried on the business in the same property, in the same firm name, until the spring of 1874, when they failed. Recently both Clary and Martin died.

In June, 1873, Clary & Martin, desiring to increase their capital stock, agreed that each should put into the firm, to be used in the business, the additional sum of $5,000. On June 7, 1873, Clary obtained his $5,000, on his promissory note to H. P. Stentz, on which note James Sawyer became his surety, and the money was used by the firm in its business, as was also the sum advanced by Martin. In order to secure Sawyer as such indorser, Clary, at the time the money was obtained, conveyed to him his undivided half of the property hereinbefore mentioned, and also, for the same purpose, conveyed to him, by another instrument, other lots of which he was sole owner. Although those instruments were in the form of absolute deeds, they were in equity, by the agreement of the parties, made at the time they were executed, only mortgages to save Sawyer harmless from the payment of the $5,000, for which he became surety. Sawyer, at the time, knew that the distillery property was occupied and used by the firm in its business, and he testified as follows: "Two deeds were made because the lots were individual and the distillery was company property, and it was so distinguished in the deeds." A question is made as to the sufficiency of the delivery of those instruments, but it may be assumed, for the purposes of this report, that they were properly delivered.

On February 6, 1874, under the erroneous belief of the parties that the instruments had become void for the reason that they had not been recorded within six months after their execution, the parties destroyed both instruments, and Clary executed and delivered to Sawyer like deeds of that date, under the same agreement, that the instruments should become void if Clary paid said sum of $5,000 and interest. In the instrument containing a description of the distillery property, it is stated that the premises are "known as Clary & Co's distillery property, being about three acres of land, on which is situated the still-house, hog pens and cattle barns."

"The above described premises are now occupied by Clary & Co., and were deeded to Clary & Co. by Orlando Quimby, on the 12th day of February, 1864, and recorded in Huron County Records of Deeds, vol. 16, pages 58 and 59." These instruments were deposited with the county recorder for record, on April 9, 1874.

The proceeds of the lots belonging to Clary in his own right, being insufficient to pay the debt of $5,000, Sawyer was compelled to satisfy the indebtedness, and the amount remaining due to him is more than $3,000.

On October 15, 1873, the First National Bank of New London obtained in the Court of Common Pleas of Ashland county, a judgment against Clary & Co., composed of George W. Clary and Seymour B. Martin, for $1,025.10 and costs, and on December 12, 1873, an execution issued on the judgment was levied on the distillery property.

On March 6, 1874, the Norwalk National Bank obtained a judgment in the Court of Common Pleas of Huron county, against Clary and Martin, partners as aforesaid, for $1,503 and costs, and on the same day they caused an execution issued on the judgment to be duly levied on the same distillery property.

Subsequently the distillery property was sold on a *venditioni exponas* issued on said judgment in favor of the First National Bank. After satisfying that writ, there remained in the hands of the sheriff $955.76; and the Norwalk Bank having, on October 24, 1874, obtained another execution on its judgment, demanded that the sheriff should apply such balance in his hands in satisfaction of such writ; but the sheriff refused to so apply such balance, on the ground that it was claimed by Sawyer as due to him on his mortgage; and thereupon, the Norwalk National Bank commenced an action in the Court of Common Pleas of Huron county, against the sheriff and Sawyer, to compel such payment. In that Court it was adjudged that the money should be paid to the bank, and Sawyer appealed to the District Court. In the latter Court it was adjudged that the money should be paid to Sawyer, and thereupon the bank filed a petition in error in this Court to reverse the judgment of the District Court.

OKEY, C. J.  The instrument dated June 7, 1873, executed by Clary to Sawyer, and containing a description of the distillery property, was in equity an indemnity mortgage, to save the latter harmless from the payment of the debt of Clary, and, under the circumstances, its effect was not destroyed by its destruction.  *Dukes* v. *Spangler*, 35 Ohio St., 119; *Jeffers* v. *Philo*, 35 Ohio St., 173.

Although the money received by Clary from Stentz was used in the prosecution of the partnership business, this did not make it a partnership debt.  *Peterson* v. *Roach*, 32 Ohio St., 374; *Merchants & T. Ins. Co.* v. *Richardson*, 33 La. Ann., 1308, S. C., 39 Am. Rep., 290.

At the time the instrument was executed, the property was in the actual possession and use of the firm of Clary & Co., in the prosecution of their distillery business, and Sawyer was then fully aware of the fact.  Moreover, the property was purchased by the firm with the moneys of the partnership, to be used for partnership purposes.  It was, in fact, partnership property, and we are of opinion that the fair inference from the testimony, as it is disclosed in the record, is, that on June 7, 1873, when Sawyer received such mortgage, he knew that the distillery, and the lot on which it was situated, were the firm property of Clary & Co.  The question is, therefore, whether, under such circumstances, Sawyer acquired a lien on the undivided half of such property superior to the lien of the bank, the debt of the latter having accrued subsequently to the execution of the mortgage.

The question, in the form stated, we have no hesitancy in answering in the negative.  Such mortgage is not available until the partnership debts have been paid and the partnership accounts discharged.  A creditor of the partnership has a clear right, by proper proceeding, to have the proceeds of a sale of the property applied to his debt, in preference to such mortgage, and a creditor whose debt against the partnership arose subsequently to the execution of such mortgage has the same right to assert his lien as against such mortgage that would exist in favor of a prior creditor.  *Tarbell* v. *West*, 86 N. Y., 280; *Henry* v. *Anderson*, 77 Indiana, 361; *Lovejoy* v. *Bowers*, 11 N. H., 404.  And see *Sumner* v. *Hampson*, 8 Ohio,

328, S. C. 32 Am. Dec., 722; *Martin* v. *Trumbull*, Wright, 386; *Rammelsberg* v. *Mitchell*, 29 Ohio St., 52; *Ludlow* v. *Cooper*, 4 Ohio St., 1; *Baird* v. *Baird*, 1 Dev. & Bat., 524, S. C. 31 Am. Dec., 399; Jones on Mortg., Secs. 119, 120; 2 Ekwell's Lindley on Part., 642 *et seq.*

True, a mortgagee is a purchaser (*Williams* v. *Sprigg*, 6 Ohio St., 585; *Williams* v. *Englebrecht*, 37 Ohio St., 283), and, where acting *bona fide,* is entitled to the rights of a purchase; but notice of the fact that land apparently owned by tenants in common is in reality partnership property, defeats the protection afforded to *bona fide* purchasers. Whether knowledge of the mere fact that the distillery was occupied and used by the firm of Clary & Co. in their partnership business was notice to Sawyer that it was partnership property, is a question we need not decide. That it would be such notice in England is clear. *Cavander* v. *Bulteel*, 9 L. R. Ch. App. Cas., 79. And see *McKinzie* v. *Perrill*, 15 Ohio St., 162; 2 Led. Cas. in Eq. (4th Am. Ed.), 180; *Mechanic's Bank* v. *Godwin*, 5 N. J. Eq., 334.

In view of the course taken on the trial in the District Court and in the argument of the cause in this Court, the possibility that Martin authorized the mortgage to be executed, and the danger that, under the circumstances, injustice may be done to Sawyer by rendering final judgment here, we have determined to reverse the judgment, without exercising the power we have in such equity cases to render final judgment, and remand the cause for a new trial. Moreover, Martin's representatives should be made parties.

*Judgment reversed.*

*G. T. Stewart* and *C. L. Kennan*, for plaintiff in error.
*L. D. Strutton*, for defendant in error.