## BARROILHET v. BATTELLE et al.

Where plaintiff leased a lot to B for ten years, at a monthly rent, payable monthly; at the end of the term, B to have two-thirds of the appraised value of the house to be by him erected, and the lease also contained this clause : "And it is further agreed, etc., that the brick house now being built, etc., shall always be and remain, as the same is hereby declared to be, mortgaged as security for the payment of the monthly rent herein stipulated :" *Held*, that it was a mortgage, and that it might be foreclosed on the non-payment of the first, or any month's rent.

And where such lessee completed the building, and subsequently mortgaged the lease to T, and afterwards assigned the lease to T for further security, and T entered as tenant and paid rent, there being back rents due from the original lessee : *Held*, that T was bound to know the terms of the lease and the mortgage therein contained ; that plaintiff had a right to foreclose, and sell the reversionary interest of the original lessee, to wit : two-thirds of the value of the house at the end of the term ; that T, provided she paid the rent, would have the right of possession until the end of the term, the acceptance of rent from her having waived the forfeiture of the lease.

A party holding under an assignment of a recorded lease, containing a mortgage clause, is bound to know the contents thereof, and is, therefore, subject to the mortgage, although the instrument is recorded in the book of leases, there being a privity of estate.

APPEAL from the Superior Court of the City of San Francisco.

The plaintiff, on the thirty-first day of October, 1853, leased of the defendant Battelle, a certain lot in the city of San Francisco, for the term of ten years, commencing the fifteenth day of November, 1853, at a monthly rent of three hundred and fifty dollars, payable monthly in advance, with the privilege, on the part of the lessee, to continue the lease, upon the same terms, for five years longer. There is a clause in the lease, that at the expiration of the term, the brick house, then being erected on the premises, should be appraised, and the lessor should take it at two-thirds of its appraised value. There is also a clause in the lease, in these words : "And it is further agreed and covenanted, by and between the parties hereto, that the brick building, now being erected on the said demised lot of ground, shall always be and remain, as the same is hereby declared to be, mortgaged as security for the payment of the monthly rent herein stipulated." This instrument was only recorded among "Leases." The defendant Battelle, completed the building, and on the seventh day of March, 1855, borrowed of defendant Jenny Tyler, the sum of ten thousand dollars, and mortgaged the lease to her agent for her benefit, who assigned the same to her for the purpose of securing the repayment of the loan. On the twenty-fourth day of January, 1856, the defendant Battelle, assigned all his interest in the lease to defendant Tyler, who thus became the tenant of plaintiff, and paid him regularly the rents falling due after the assignment of the lease to her. The defendant Battelle failed to pay the rents falling due before the assignment, amounting to the sum of three thousand three hun-

dred and fifty-eight dollars and twenty-five cents. The plaintiff brings this action to foreclose the mortgage upon the building. The defendant Tyler, answered, admitting the due execution of the lease, alleging the loan to Battelle, his mortgage and assignment of the lease to her, and denying that she had any notice that any rents were unpaid, and also denying all priority of lien upon the building. The defendant Battelle (or both) put in a separate answer, denying the right of the plaintiff to bring this action under the covenants of the lease, and alleging that he has no interest in the lease, having assigned the same to defendant Tyler, and objects that he is made a party to the suit. The plaintiff put in a separate demurrer to each of these answers, which were overruled by the Court, and plaintiff appealed to this Court.

*Whitcomb, Pringle & Felton,* for Appellant.

The language of the lease is clear and unequivocal. It is, that the brick building now in process of erection is mortgaged as security for the rent. Of the legal meaning of these words there can be no doubt; and this lease, by the ordinary rule of construction of written instruments, must be interpreted so as to give effect to the intention of the parties, as manifested by their words, unless there is some clear and manifest technical impossibility of so doing.

The parties, then, to this lease, have declared this brick building mortgaged to secure the rent. Is there any technical objection to such a mortgage?

If this is a mortgage, then it is intended to secure a certain sum payable at fixed intervals. The mortgage is but the incident to the debt, which it secures, and the right to foreclose it accrues on the maturity of the debt without being paid.

As to the defendant Jenny Tyler, it is clear that her position is, in all respects, the same as that of Battelle. She is the assignee of this lease, and has full knowledge of every thing contained in the instrument, from which flow all the rights she herself has in the premises. She knew, therefore, that this house was mortgaged to secure the payment of a certain sum each month during the term of this lease, and she took it subject, of course, to such mortgage.

*Peyton, Duer, Lake & Rose,* and *Harmon & Sunderland,* for Respondents.

The clause in the lease from Battelle to Barroilhet, mortgaging the building to be erected as security for the rent, does not operate as a mortgage of the tenure or the leasehold estate.

At most, it is only a chattel mortgage as between the parties to the lease, and as such is void as to third persons, not being accompanied by a change of possession.

A mortgage of a house attached to the soil is certainly a mortgage of real estate. It is not, therefore, binding on any subsequent purchaser or mortgagee without notice, unless recorded. The lease in question never was recorded in the book of mortgages, and the lien, if any thereby created, must consequently be postponed to the mortgage of Tyler.

Is it to be supposed that a purchaser of real estate is to take it subject to an unrecorded (chattel?) mortgage of the buildings thereon, which may constitute the chief value of the property? This would defeat the whole policy of the Recording Acts.

BURNETT, J., delivered the opinion of the Court—MURRAY, C. J., concurring.

The first question which arises in this case, is, whether the stipulation amounts to a mortgage, according to the true intent of the parties. It will be observed that the language, though concise, is very explicit. The house is "declared to be *mortgaged as security.*" That the parties meant something by these words is clear, and what else could that meaning be, but that which is so clearly expressed? What language could more clearly express, in the same number of words, the intention to create a mortgage? The term, "mortgaged," is very definite and certain in itself, but the parties have added "*as security* for the payment of the monthly rent herein stipulated," thus giving an express definition of the sense in which they used the term. It is no objection to this view that so few words were employed. The law does not bind parties to use a greater number of words than are necessary to express their meaning. The form of a deed, as given in Kent's Commentaries, is full as brief as the mortgage in this instance. 4 Kent, 461.

Conceding that this view is correct, the question then arises, whether plaintiff could enforce his mortgage, at any time when the rent was in arrear, or whether he must wait until the expiration of the full term, the house still remaining in the mean time as security. And here again the parties, by the terms used, seem to have very clearly expressed their intentions. The house was "mortgaged as security for the payment of the *monthly rent herein stipulated.*" The rent was stipulated to be paid monthly in advance, and the parties not only refer to the stipulations, but they say expressly, "*the monthly rent.*" If a party executes a mortgage to secure the payment of a certain sum of money due by installments, at different periods, it is apprehended that there could be no doubt about the right of the mortgagee to foreclose, upon the failure to pay the first installment, unless there were qualifying words in the mortgage, showing a different intention. The mortgage is only an incident of the debt secured, and it follows as a legitimate consequence, that when the creditor can sue upon and enforce his debt, he can equally enforce the security—

Barroilhet v. Battelle.

the incident that follows it. And as a suit to forclose a mortgage is an equitable proceeding, the Court can always make a decree to suit the peculiar circumstances of each particular case.

But conceding the opposite construction to be true, for the sake of argument only, then in what condition would the plaintiff be placed? The lease was a fair, honest contract, made by competent parties, who had the undoubted right to make their own terms. The lessee fails to pay the rent, and the plaintiff seeks his remedy. If he demands the rent, with all the formality necessary to forfeit the lease, then the lessee meets him with his claim for the two-thirds value of the house. The lessee has had the advantage of the market, and as events turn out, he finds he had better give up the house at two-thirds of its appraised value, and thus end the lease and his liability. And he therefore deliberately refuses to pay the rent, so as to force the lessor into this position and compel him to pay for the house before the end of ten years, and before he has realized any considerable sum from the rents of the property. If, on the contrary, rents go up, he pays the rents as they become due, and thus enjoys all the advantages of the bargain. If, however, the lessor does not wish to forfeit the lease, and proceeds upon the mortgage, the lessee meets him with the objection that he cannot sue until the expiration of the term. And if the lessor waits until the expiration of the term, he is then met by the objection that his rents were barred by the Statute of Limitations. The very facts of this case go to show the propriety of such a stipulation as we construe the mortgage clause to be.

But it is objected that whatever may have been the intention of the parties, " the house which was being erected," could not be the subject of the mortgage. Chancellor Kent says : " Property of every kind, real and personal, which is capable of sale, may become the subject of a mortgage. It will, consequently, include rights in the reversion and remainder, possibilities coupled with an interest, rents and franchises." 4 Kent, 148. It would seem that these terms were broad enough to include the house in question. It would appear to be a just conclusion that if Battelle could have any property in the house, he might sell or mortgage it. And the first section of the act of May 11th, 1853, Com. L., 911, expressly authorizes the mortgage of " such personal property as shall be fixed in its structure to the soil," and that such mortgage " shall have the same effect against third persons, as mortgages upon real property." But aside from that act, and upon the general principles of the common law, we should have no doubt of the capacity of Battelle to mortgage the house in the manner he did.

The defendant Tyler, does not deny the alleged non-payment of the rents, but sets up the facts that she had no knowledge of

these rents and no knowledge that plaintiff claimed any lien or mortgage upon the house. And her counsel object that the recording of the lease on the book of leases was no notice to her, as the same was not recorded in the book of mortgages. We do not think it necessary to decide whether such a record would be notice, as the defendant was bound to know the contents of the lease under which she claims; and being in privity with Battelle, she is estopped to deny any want of such knowledge. She was bound to know the contents of the whole instrument, and that the back rents were unpaid. The recitals in a deed operate as estoppels, "working on the interest in the land if it be a deed of conveyance, and binding both parties, privies in blood, privies in estate, and privies in law. Thus the recital of a lease, in a deed of release, is conclusive evidence of the existence of the lease against the parties, and all others claiming under them in privity of estate," "which cannot be averred against, and which forms a muniment of title." 1 Green. Ev., § 23, note 2.

It is however, further objected, that if a decree of foreclosure should be made, and the house sold under the decree, that then the purchaser would not be entitled to possession of the house, and that the same would still remain as security for the future rents; and for this, among other reasons, it could not have been the intention of the parties that the mortgage should be foreclosed before the end of the term. This would seem to be incorrect. The purchaser under the sale would acquire the right of Battelle to the two-third valuation of the house at the end of the term, whether the term was ended by forfeiture or by expiration, and he, the purchaser, would not be bound to make good the future rents, but would take the house, discharged from all liability, for them. The purchaser would gain no present right of possession, as the possession of the house cannot be separated from that of the lot on which it stands.

Some of the learned counsel for the defendant Tyler, have taken the ground that the plaintiff having received the payment of rent from her after the assignment of the entire lease, has waived his right upon the mortgage clause. And they insist, that after the forfeiture of the lease by the non-payment of rent, if the landlord received the rent, he waives the forfeiture and the lease continues. There can be no doubt of the correctness of this principle, but it is not perceived how it can apply to the facts of this case. The receipt of rents subsequent to the assignment, which the defendant Tyler had a right to pay, as there had been no forfeiture of the lease, could not forfeit the rights of plaintiff under the mortgage as we have construed it. The plaintiff does not seek to terminate the lease but to sell the reversion of the lessee. If the defendant Tyler elected to pay the rents accruing after she became the tenant of plaintiff, she

had a perfect right to do so, and she could then let the plaintiff proceed upon his mortgage and sell the reversion, as the plaintiff, under the terms of this lease had failed to demand the rent, so as to work a forfeiture, and could only proceed in this way. If she preferred, she could pay the rents in arrear, otherwise she could let the mortgaged right of the lessee be sold. Under any view we can take of this case, we can see no ground upon which to defeat the plaintiff's right to recover. I think judgment of foreclosure should be entered in this Court.

So ordered.