Mtnshall, O. J.
Joshua W. Johnson being indebted to the New Vienna Bank in the sum of $1,628, execubed, December 30, 1885, a mortgage to the bank to secure the same, which was duly filed for record the following day. The bank was a partnership doing business in that name. The mortgage covered two tracts of land, one containing 71 and a fraction, and the other 38 and a fraction, acres, and purported to convey “ all the estate, title and interest ” of said Johnson in and to said lands “ to the said New Vienna Bank, its successors and assigns forever,” without other words of limitation. Afterwards, in the month of January, 1886, Johnson and his son Edward entered into an agreement for an exchange, by which the father agreed to convey to the son the 38 acre tract covered by the mortgage, and the son agreed to convey to the father 26 acres, owned by himself. In accordance with this agreement the son at once conveyed the 26 acres owned b}r him to his father, who, on the 4th of February, following, mortgaged it to one Morris to secure an indebtedness. But the father by reason of sickness, as is alleged, failed to convey the 38 acre tract to the son, as by the terms of the agreement he was bound in equity to do. •On the day following the mortgage to Morris, he executed a mortgage to one Woolard to secure an indebtedness of $1,995, on the other tract of 71 acres covered by the mortgage to the bank. And afterward on June 24, 1886, being in failing circumstances, he made an assignment of all his property for the benefit of his creditors to Edwin Arthur which was duly filed on the same day in the probate court *309 The assignee, under the order of the probate court, being about to sell the 38 acre tract with the other lands assigned to him, Edward, the son, commenced an action in the common pleas to enjoin the sale, and compel the conveyance of the tract to him under the agreement for an exchange which had been executed on his part by the conveyance of the 26 acres to his father; he also averring that he had taken possession •of the 38 acres, at the time of the exchange, and had continued in the possession and occupation of it as his own ever since, whereby all parties had notice of his rights.
All parties in interest were finally made parties to the suit and answered setting up their rights. To the answer and cross-petition of the bank, setting up its mortgage and claiming a lien prior to all others upon the 38 and 71 acre tracts covered by it, the plaintiff and the administrator of Woolard (he having died) demurred, claiming that the mortgage having been executed to the bank by name, instead of to the members composing the firm, was of no avail as a security, and that, therefore, the cross-petition of the bank failed to state facts entitling it to any relief.
The case having been heard and determined by the rendition of judgment in the common pleas, was appealed to the circuit court; where, upon a renewal of the demurrers, they were sustained, and the answer and cross-petition of the bank dismissed. The action of the circuit court in this regard is assigned for error here. Hence the only question to be decided upon the record is, whether the mortgage executed to the New Vienna Bank can be made available to it as a lien on the land as a security in its favor against the claim of the plaintiff and those of the other mortgagees, all of whom are subsequent in time. It is claimed that it cannot for the reason that the bank is not a legal entity; that it is simply a partnership of certain natural persons doing business in that name, and incapable of holding the legal title to lands in their firm name. Conceding this to be true, does it follow that the instrument is not available to the bank as a lien on the land to the extent of the debt intended by the maker to be secured thereby ? If so, it must be for the reason, that, *310 in order to create a lien on laird as security for a debt, the legal title must, in all cases, be transferred to the person intended to be secured, or, that such a lien cannot exist independent of the legal title. But this is not the ease. There are what are termed equitable as well as legal mortgages. The distinction is that a legal dr common -law mortgage is a conveyance of the land accompanied by a condition contained either in the deed itself, or in a separate instrument executed at the same time. And, to quote the language of Mr. Jones, which has been frequently quoted with approval by the courts., “ In addition to these formal instruments which are properly entitled to the designation of mortgages, deeds and contracts which are wanting in one or both of these characteristics of a common law mortgage are often used by parties for the purpose of pledging real property, or. some interest in it, as security for a debt or obligation, and with the intention that they shall have effect as mortgages.” These kinds of mortgages, are, as he says, “ as many as there are varieties of ways in which parties may contract for security by pledging some interest in lands.” And he adds, “ whatever the form of the contract may be, if it is intended thereby to create a security, it is an equitable mortgage.” Jones on Mortgages, §162. We are not unmindful of the fact that, under the decisions that have been made in this state, giving a construction to our statutes regulating the execution and recording of mortgages, many instruments that would be treated elsewhere as equitable mortgages, could have no effect given them here as against third persons, whether they had notice of their existence or not. But these statutes and the construction placed upon them, do not go beyond what they require as to the signing, acknowledgment and recording of the instrument. They prescribe no requisites as to the contents of the instrument- — -as to how lands shall be charged as a security, or the intent manifested. The character of the instrument in this regard and its effect, are left to be determined by the application of the general principles of law and equity on the subject. So that any instrument that would, by the application of these princi *311 pies, be regarded as constituting a lien on land as against third persons with notice, will have the same effect under our recording statutes, where it has been duly executed and recorded. Strang v. Beach, 11 Ohio St. 283; Hurd v. Robinson, Id. 232, and Dodd v. Bartholomew, 44 Ohio St. 171. By the record of the instrument it becomes notice to others of the equitable as well as legal rights of the parties. It may as against third persons be corrected to give effect to the intent apparent upon the face of the instrument, or the courts may,, in a proceeding to enforce it, regard that as done which ought to have been done, and treat the instrument as if corrected. Pomeroy, Eq., § 1235.
A few instances may be selected to illustrate the doctrine and show its application to this case. An instrument which does not transfer the legal estate has been held to operate as an equitable transfer of it in the nature of a mortgage. Thus, a mortgage to certain executors from which the word “heirs,” creating a fee, was omitted, and the word “successors ” used instead, was held to be an equitable mortgage in fee, and was reformed in a proceeding to foreclose it, against a subsequent mortgage of the same land with notice. Gale v. Morris, 29 N. J. Eq. 222. And so, in Brown v. National Bank, 44 Ohio St. 269, effect wass given to an instrument as a mortgage in fee, although words of inheritance were not used in it. The instrument had been executed in the state of Indiana upon lands in this state, and had therefore to be construed by the laws of this state. By it the debtor simply mortgaged and warranted his land to his creditor as a security for the debt, with a provision for foreclosure • in case of non-payment. The purpose to secure the debt by a mortgage upon the land was apparent from the instrument, and of this intention all persons, dealing with the land, were held to have notice by the record of the instrument. See the opinion by Owen, C. J., p. 276. And so in California it is held, that the words “ we mortgage the property,” accompanied by a provision for the sale of it, upon non-payment of money thus secured, are sufficient to create a mortgage. De Leon v. Higuera, 15 Cal. 483, and Barroilhet v. Battelle, *312 7 Cal. 450. So, too, when by the terms of his deed, a grantor reserves a lien on the land as a security for the unpaid purchase money, it operates as a mortgage, and the record of the deed is constructive notice to all others of his rights. Pomeroy Eq.,'Sec. 1255. But the lien so secured is independent of the legal title, as that passes by the deed to the purchaser, who is said to hold in trust for the grantor until the purchase money has been paid. For many other similar instances see Jones on Mortgages, Secs. 163-171. It is true that some of these could not, for reasons before stated, be made available as liens in this state against third persons.
Holding the legal title may, in some cases, be of much advantage to the mortgagee, as thereby, on condition broken, he may recover the land and hold it until his debt is satisfied. And this may be said to be the distinguishing feature of a common law mortgage. It is, however, seldom resorted to — the remedy by foreclosure and sale (and which may be had in all cases), being more generally adopted. In a proceeding by foreclosure it is not material where the legal title resides. A sale is required in all cases, (Section 5316 Revised Statutes,) and the purchaser takes thereby all the interest of both the mortgagor and mortgagee in the land. As the passing of the legal title is not necessary to affect land as a security for a debt, no reason can be assigned why the debtor may not create, and the creditor accept, such a security, provided compliance is had with the statutes regulating the execution and recording of similar instruments. Such form of security certainly contravenes no rule of law or public policy, and is in harmony with the purpose and intention of the parties in all cases where, the whole object is, on the one hand to give, and on the other to obtain, a security.
The execution of a mortgage in the usual form is now generally regarded as only a security, and not as a conveyance. Like the debt it secures, it is treated throughout as a chose in action. That a partnership may make contracts in its firm name is a matter of elementary law. It may make a note in its firm name, or may accept one payable to itself It may be formed to deal in land, and may make valid con *313 tracts therefor. And if the firm cannot hold the legal title, the vendor holds it in trust for the firm. Sherry v. Gilmen, 58 Wis. 324, 332. In this case the court say: “ There does not seem to be any reason for holding that a partnership, in making a purchase of real estate for the benefit of the firm, may not do so in the same manner that they make other purchases, viz.: in the firm name.” A number of cases are cited, where it has been held that a general description of the grantee is sufficient to support the deed — as the “ heirs ” or “ children ” of a given person, on the principle that, that is certain which can be made certain, and therefore applicable to the members of a firm. See, also, Bates on Partnership, Sec. 296, and eases cited.
And it has been held in some cases that a conveyance to a firm is a conveyance to the members as tenants in common, who hold the title in trust for the firm. Jones v. Neal, 2 Pat. & H. (Va.) 339; Beaman v. Whitney, 20 Me. 413. That a partnership may acquire an equitable estate in real property is decided in Rammelsberg v. Mitchell, 29 Ohio St. 22, 52. Therefore, to say that a partnership cannot contract for an interest in land in its firm name as a security only, would be to establish an exception, with neither reason nor necessity for its existence. There are quite enough conflicting principles in the law, or what the Romans would have termed “inelegancies,” without adding to their number, in the absence of any controlling necessity for so doing.
The instrument, the validity of which is questioned in this case, was designed by both parties to be a mortgage. This is apparent on the face of it. The only objection made to it is, the incapacity of the partnership in its firm name to take and hold the legal title to real estate. But this is not material, for if it were so, then, as already shown, Johnson, the mortgagor, would hold the legal title in trust as a security for the firm. In such case there would be no need of a formal reformation, as it would be the duty of the court, m the exercise of its equity powers, to treat that as done which ought to have been done, and give effect to the instrument in a proceeding to enforce it, according to the priority of its *314 record, by awarding to the bank a lien upon the land for the satisfaction of the amount due it.
The case of Hughes v. Edwards, 9 Wheaton 487, has a close analogy to this case. There by the laws of Kentucky an alien could not hold the title to lands in that state, and the mortgagees being subjects of Great Britain, objection was taken to the mortgage on this ground. But the court said: “ The objection is deprived of all its weight in.a- ease where the mortgagee, instead of seeking to obtain possession of the land, prays to have his debt paid, and the property pledged for its security sold, for the purpose of raising the money. Under this aspect the demand is, in reality, a personal one, the debt being considered as the principal, and the land merely as an incident; and, consequently, the alien-age of the mortgagee, if he is a friend, can, upon no principle of law or equity, be urged against him.”
In The Chicago Lumber Co. v. Ashworth, 26 Kan. 212, a mortgage, taken in the firm name of partners, was held to be a valid security. The court said : “ Ashworth was cognizant of the name and style under which the partners transacted their business, and executed'the mortgage to the Chicago Lumber Co. for the benefit of the partners composing the partnership transacting business in that name. The mortgage was therefore'taken in the name of the partnership ; hence there was an actual grantee in the mortgage, although such grantee was merely the name and style of the partnership; ” and the legal title was regarded as held in trust for the real grantees, the partners, which, as we have seen, is all that is necessary where a sale, and not the possession of the land, is sought, in proceedings to enforce the mortgage as a security.
The case of Stambaugh v. Smith, 23 Ohio St. 596, is not in point. The real question there was, not whether a firm could hold the title to a lease in its firm name, but whether it could be released by the firm in its own name, the legal title being not in it, but in a member in trust for it. It was held that it could not, for the very plain reason that the cestui que trust can, in no case, transfer the legal title. That can only be done by the trustee. The case does not decide, *315 nor was it intended to decide, that a partnership may not hold a .lease in its firm name, so as to be protected in the enjoyment of it, according to the -intention of the parties. That it may hold the equitable title in fee simple was held in Rammelsberg v. Mitchell, supra.
We think the court erred in sustaining the demurrer to the answer and cross-petition of the bank.

Judgment reversed and cause remanded for further proceedings.