MORGAN, ESTATE OF, IN RE.

Probate Court, Columbiana County.

No. 57319.   Decided June 27, 1962.

TOBIN, J.   This matter came on to be heard on the Exceptions of the Tax Commission of Ohio for failure by the Executrix, to assess inheritance tax on decedent's interest in the good will of Morgan's Drug Store.

The facts of said case are amply set forth in the statement of the Brief of the Tax Commission and the Court accepts them as facts in the case:

William M. Morgan of Lisbon, Ohio, died testate on July 1, 1961. By his will dated August 21, 1959, the deceased devised and bequeathed the major portion of his estate, except for some specific bequests not pertinent here, to his wife, Sara M. Morgan, and authorized her to enter immediately into operation of his interest in the retail drug business.

William Morgan was born and raised in Lisbon, Ohio (TR. 4). After he graduated from pharmacy school he worked for W. C. Lawrence (TR. 3). Then in the early 1920's, he established Morgan's Drug Store (TR. 8), which he operated as a sole proprietor until the early 1940's, when he went into partnership with his son, William Morgan, Jr. (TR. 3). During the years from 1920 through 1940 the business was never very profitable (TR. 3). However, after the depression (TR. 3), and especially after the partnership was formed (TR. 7), business became better.

The Morgan Drug Store is one of two drug stores in Lisbon, Ohio, a town of about 3,500 population. It is located on U. S. Route 30 in the center of town, on the southeast corner of the public square, on a plot known as "the Morgan block" (TR. 7). The drug store is presently managed by William Morgan, Jr. and Mr. Felix Butch. Although Sara Morgan and William Morgan, Sr., worked in the store from time to time, customer relations in the past several years have been carried on by William Morgan, Jr., and Mr. Felix Butch (TR. 7). After Mr. Morgan, Jr., became a partner, Mr. Morgan, Sr., began to unload responsibility and was on vacation a great deal of the time (TR. 6). The recent build-up of the business is due to the efforts of William, Jr., and Mr. Butch. (TR. 6.) Mr. Butch, who is very popular in Lisbon is considered to be responsible for much of the business of the Morgan Drug Store (TR. 4). Business has not changed since William, Sr., died (TR. 6).

A balance sheet for the partnership prepared on July 1, 1961, reveals that the capital accounts of William Morgan and his son are valued at $26,903.00 and $31,866.63, respectively, and that both capital accounts total $58,769.63. Further, the profit and loss statements of the partnership reveal that in 1958 there

was a net profit of $26,607.82; in 1959 the net profit was $30,-576.26; and in 1960 the net profit was $30,880.87.

The Court hereby rules that good will was an asset in Morgan's Drug Store in July of 1961.

The Court further rules as to Item No. 2, the relationship of the devisee to the decedent is immaterial insofar as it relates to taxability or non-taxability of good will. There is no statute making the surviving spouse immune from inheritance tax on any asset of business. Formerly, under Section 8573 et seq., and Section 8606 et seq., General Code, the surviving spouse was not an heir. Section 8573, General Code, left the surviving spouse out completely as an heir. His or her rights in dower, etc., are fixed by Section 8606 et seq., and Section 8592, General Code, which indicate the proportion of personal property the surviving spouse received.

Section 10503-4, General Code, passed in 116 Ohio Laws and effective September 2, 1935, made the surviving spouse an heir. Section 10502-1, General Code, also effective September 2, 1935, extinguished dower at death of consort with some exceptions, leaving the surviving spouse rights fixed generally in Section 10503-4, General Code, the statute of descent and distribution, now Section 2105.06, Revised Code.

The language used in Section 10502-1, General Code, making such change is, "In lieu of dower interest as terminated and *is* barred pursuant to this Section (in this case by death of the consort). A surviving spouse shall be entitled to a distributive share provided in the statute of descent and distribution (Section 10503-4, General Code, now Section 2105.06, Revised Code). There can be no doubt by these enactments that the surviving spouse is an heir for the purposes of inheritance, is subject to and has all the rights of an heir and the special relationship of wife or husband neither enlarges nor detracts from this status as an heir or gives special preference by virtue of being a surviving spouse. Having determined that good will is an asset of the business as such is taxable, the mere fact the devisee is the widow of the decedent does not give her an exemption from inheritance tax, therefore good will is taxable against the widow as it would be for any other devisee. Authority for

the above ruling is found in the citations by the State of Ohio in their Item 2 on page 5 of their Brief, and particularly in 29 Ohio St., 22, *Rammelsberg* v. *Mitchell.* The Court however, rejects in its entirety the third contention of the Tax Commission, the manner and formula by which the decedent's interest in good will have been measured. Under 29 Ohio St., 22-55, *Rammelsberg* v. *Mitchell,* the Court states as follows: "But it appears from the testimony of the appraisers themselves that they were of the opinion that they had nothing to do with the good will. Through this misapprehension of duty it would seem that the buildings, machinery, etc. were valued as though the business had been, or must of necessity be discontinued. If this were so, the estate of Rammelsberg was wronged. The difference between the value of the assets when the good will is considered as an element, and the valuation returned by the appraisers to the probate court, if there was any difference, is the measure of an advantage obtained by Mitchell over the estate of the deceased partner, which, in equity he ought not to retain. The appraisement was made with the view of transferring to the surviving partner the whole property and business of the firm, and should have been made as of a going and not of a dead concern. If Mitchell had not elected to take the property at the appraisement, it would have been the right of those interested in Rammelsberg's estate to have insisted upon a sale of the property as an entirety and as a going concern to the highest bidder, with the benefit of the good will."

Further, under authority of the same case, the Court indicates that the appraisement should have been set aside. In reviewing the inventory and appraisement filed in this case, the Court finds that the appraisers were as follows: Leland Firestone, W. J. Haifley, and Forrest McClintock, who on August 16, 1961, appraised the bare assets of the business without taking into consideration at all the good will. Therefore, that portion of the appraisal as relates to the Morgan Drug Store is hereby set aside and ordered returned to the appraisers who will appraise the entire business of the Morgan Drug Store as of the date of the death of William Morgan, Sr., and in it reflect the value of the going business in its entirety, taking into

consideration the matter of good will. In this matter they shall obtain what the market value of this business would be if sold as a going concern. The difference between the physical assets and the figures the appraisers arrive at will represent the value of good will.

They shall, forthwith, without delay make such return, and also in this appraisal include good will. The Court will then determine the proportionate share of the estate of the surviving partner and therefore fix the amount that is taxable.

Exceptions permitted to all parties.

See journal.